FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y
★ MAR 02 2010
P.M.
TIME A.M.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
TYRONE SUTTON,

        Petitioner,

 -against-

JAMES T. CONWAY, SUPT. OF ATTICA
CORRECTIONAL FACILITY,

        Respondent.
---------------------------------------------------------------x

MEMORANDUM & ORDER

06-CV-5833 (ENV)

**VITALIANO, D.J.**

 Petitioner Tyrone Sutton is before the Court on his petition for a writ of habeas corpus pursuant to 28 U.S.C. section 2254. Subsidiarily, he moves for discovery, to expand the record, and for an evidentiary hearing in support of his petition, as well as for summary judgment. For the reasons set forth below, Sutton's petition for habeas corpus is dismissed and the writ is denied, along with the subsidiary motions.

**BACKGROUND**

 On January 6, 2001, Sara Margon and Sam Chaltain were approached by two men. One man brandished a box cutter, and the other demanded their money. The men eventually took money from Chaltain and fled. Margon called the police, who canvassed the area and, within an hour of the robbery, apprehended two men fitting the descriptions previously provided by the two victims. Margon and Chaltain identified the men—William Wardrick and petitioner Sutton—as the men who had robbed them. At the time of the identification, Margon and Chaltain had been privy to police communications that a suspect was in custody, and, when identified, Sutton was wearing handcuffs and standing between two police officers. Wardrick offered post-arrest statements implicating Sutton as his accomplice in the robbery.

1

Sutton was charged, under Kings County Indictment Number 223/01, with robbing Chaltain, attempting to rob Margon, and having someone (co-defendant Charles Rodriguez)[1] threaten to kill both Chaltain and Margon if they did not drop the robbery charges against him. The indictment charged robbery in the first degree (N.Y. Penal Law section 160.15[3]); robbery in the second degree (N.Y. Penal Law section 160.10[1]); attempted robbery in the first degree (N.Y. Penal Law sections 110 and 160.15[3]); attempted robbery in the second degree (N.Y. Penal Law sections 110 and 160.10[a]; and intimidating a victim or witness in the third degree (N.Y. Penal Law section 215.15[1]).

On November 8, 2001, a jury convicted Sutton on several robbery counts and for witness intimidation.[2] He was adjudicated a persistent violent felony offender on November 30, 2001 based on both a 1979 conviction for robbery in the first degree and a 1982 conviction for robbery in the first degree and second degree, and attempted robbery in the first and second degree. The state court then imposed an enhanced sentence of 25 years to life.

The post-conviction odyssey soon kicked off. First, on May 22, 2002, Sutton moved to vacate his conviction pursuant to New York Criminal Procedure Law section 440.10, arguing that his conviction was "inconsistent, irrational and cannot stand." The prosecution replied on July 25, 2002, and, on December 3, 2002, the trial court denied Sutton's motion. Next, on January 12, 2004, petitioner's appellate counsel appealed his conviction to the Appellate Division, Second Department, arguing that (1) the "show-up" identification procedure used in identifying Sutton had been unduly suggestive; (2) his adjudication as a persistent violent offender was unconstitutional under Apprendi v. New Jersey, 530 U.S. 466 (2000); and (3)

---

[1] Rodriguez, an inmate at Riker's Island, left a threatening phone message for Chaltain at Sutton's request. Rodriguez pled guilty to tampering with a witness.
[2] Sutton's co-defendant, William Wardrick, pled guilty to robbery in the first degree.

Sutton's sentence was harsh and excessive. On April 28, 2004, Sutton filed a supplemental brief to the Appellate Division pro se, in which he argued that the prosecution had made improper comments and vouched for its witnesses on summation, thereby depriving him of a fair trial. Further, petitioner argued that Wardrick's and Rodriguez's guilty pleas should not have been considered as evidence of his guilt. Finally, he argued that the trial court had abused its discretion in discharging two sworn jurors and that, due to the cumulative effect of these alleged errors, his conviction should be reversed.

The Appellate Division unanimously affirmed instead, on November 29, 2004. See People v. Sutton, 12 A.D.3d 707, 784 N.Y.S.2d 881 (2d Dep't 2004). The Second Department found that (1) the show-up identification had not been unduly suggestive; (2) Sutton's claim that his adjudication as a persistent violent offender was unconstitutional was unpreserved and without merit; and (3) his sentence was not excessive. The court also observed that Sutton's pro se claims were either unpreserved for review, without merit, or did not support reversal. Id. at 12 A.D.3d at 707-08, 784 N.Y.S.2d at 881. On February 28, 2005, the New York Court of Appeals denied his leave application. People v. Sutton, 4 N.Y.3d 803, 795 N.Y.S.2d 179, 828 N.E.2d 95 (2005).

Undeterred, Sutton moved again under C.P.L. § 440.10, on March 25, 2005, to vacate the judgment of conviction, arguing that the trial court had erred in denying his motion to suppress his written and video statements and that he had been denied effective assistance of counsel because counsel had failed (1) to consult him adequately prior to trial (Sutton claims that counsel failed to interview him for eight months); (2) to adopt his C.P.L. § 190.50 motion; (3) to request a limiting charge concerning the co-defendants' guilty pleas; and (4) to register timely objections. The district attorney replied on July 18, 2005; the trial court denied the motion on

August 23, 2005. Sutton filed a notice of appeal on September 15, 2005, pursuant to C.P.L. § 450.15, the district attorney answered in opposition on or around October 3, 2005, and leave to appeal to the Appellate Division was denied by the Second Department on November 30, 2005.

Still not done with his pursuit of state remedies, on July 6, 2005, Sutton filed a motion to vacate judgment and set aside sentence; but this time, in Supreme Court, New York County, pursuant to C.P.L. §§ 440.10 and .20, contending that the plea-allocuting judge had failed to advise him of his constitutional rights, in violation of Boykin v. Alabama, 395 U.S. 238 (1969), contributing to the constitutional deficiency of his 1979 guilty plea. He further argued that he had been denied effective assistance of counsel in both the 1979 and 1982 cases because counsel had failed, inter alia, to challenge the validity of his 1979 plea allocution, in violation of the Sixth and Fourteenth Amendments. The People opposed on October 7, 2005, and Supreme Court denied his application on January 12, 2006. On February 6, 2006, petitioner sought leave to appeal this decision pursuant to C.P.L. §§ 450.15 and 460.15. The People opposed this motion on March 20, 2006, and petitioner replied on March 24, 2006. Six days later, the First Department denied leave. On other tracks, Sutton sought reconsideration of the January 12, 2006 decision and moved to compel the production of documents in the same court. This too was opposed by the People. Supreme Court denied these applications on July 10, 2006.

While pursuing remedies in New York County, Sutton's trek actually took him back to the Brooklyn bank of the East River as well. On November 21, 2005, he filed a motion in Kings County Supreme Court to set aside the underlying sentence here, pursuant to C.P.L. § 440.20, asserting that the sentence was unauthorized, illegally imposed, and invalid as a matter of law in light of the fact that his 1979 guilty plea to robbery in the first degree—one basis for his adjudication as a persistent violent offender—had been unconstitutional. The district attorney

4

opposed the motion on December 22, 2005 and, after petitioner's January 6, 2006 reply, the trial court denied it on January 25, 2006. Citing C.P.L. §§ 400.15(8) and .21(7)(b), the court held that Sutton was precluded from raising this claim in a post-conviction motion. The trial court elaborated that Sutton's failure to challenge the constitutionality of the 1979 plea at the time that he pled guilty, or in 1982, when he was first sentenced as a predicate felon, or even during the 2001 violent offender adjudication, precluded relief on the motion. Again, on February 2, 2006, Sutton applied for leave to appeal, and, again, in a March 30, 2006 decision, the Second Department denied it.

Meanwhile, on December 22, 2005, Sutton returned to the Appellate Division seeking a writ of error coram nobis, arguing that he had been denied effective assistance of appellate counsel under the Fifth, Sixth, and Fourteenth Amendments. Specifically, Sutton cited appellate counsel's failure to investigate or argue the alleged unconstitutionality of his 1979 guilty plea at the 2001 violent felony offender adjudication and argued further that appellate counsel had informed him, incorrectly he claims, that Blakely v. Washington, 542 U.S. 296 (2004) did not apply to his case. Sutton filed an addendum to his writ application on January 23, 2006. The district attorney opposed on February 8, 2006. On April 4, 2006, the Second Department found one more time that Sutton had failed to establish his claim and denied the writ. See People v. Sutton, 28 A.D.3d 497, 811 N.Y.S.2d 590 (2d Dep't 2006). His leave application to the Court of Appeals was denied by that court on July 12, 2006.

On October 17, 2006, Sutton timely filed the instant pro se petition for a writ of habeas corpus. In support of his petition, Sutton argues the following: (a) the trial court erroneously ruled identification testimony would be admissible at trial even though based upon an unduly suggestive show-up identification, in violation of due process; (b) his adjudication as a persistent

violent offender, and excessive length of his sentence, were a violation of Apprendi and, ultimately, of the Sixth and Fourteenth Amendments; (c) the prosecutor's summation was violative of his rights; (d) the trial court failed to instruct the jury that the guilt of his alleged accomplices could not be used as evidence of his guilt; (e) the trial court improperly discharged two sworn jurors; and (f) he received ineffective assistance of both trial and appellate counsel. On August 17, 2007, Sutton filed a motion to obtain discovery, expand the record, and for an evidentiary hearing. On January 11, 2010, he filed a motion for summary judgment.

**STANDARD OF REVIEW**

This petition is subject, of course, to the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 ("AEDPA"), which provides that a federal writ of habeas corpus may not be granted to a state prisoner held subject to the judgment of a state court unless "the state court arrive[d] at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decide[d] a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 412-13 (O'Connor, J., for the Court, Part II) (citation omitted). Clearly established federal law "'refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions.'" See Carey v. Musladin, 549 U.S. 70, 74 (2006) (quoting Williams v. Taylor, 529 U.S. 362, 412 (2000) (O'Connor, J., for the Court, Part II)). It refers to "law that is 'dictated by [Supreme Court] precedent existing at the time the defendant's conviction became final.'" McKinney v. Artuz, 326 F.3d 87, 96 (2d Cir. 2003) (citation omitted). A state court's "unreasonable application" of law must have been more than "incorrect or erroneous": it must have been "'objectively unreasonable.'" Sellan v. Kuhlman, 261 F.3d 303, 315 (2d Cir. 2001) (citing Williams, 529 U.S. at 409 (O'Connor, J., for the Court, Part II)).

Claims not procedurally barred but also not adjudicated on the merits in state court are reviewed de novo. See, e.g., Cone v. Bell, 129 S. Ct. 1769, 1784 (2009) (citations omitted).

**DISCUSSION**

A.   Admission of showup identification evidence

The Appellate Division decided Sutton's federal due process claim regarding the showup identification on the merits. See Sutton, 12 A.D.3d at 707 ("Contrary to the defendant's contention, the showup identification procedure, which was conducted in close spatial and temporal proximity to the commission of the crime, served to secure a prompt and reliable identification, and was not unduly suggestive." (citations omitted)). Seeking further state review, Sutton raised this same federal due process claim in his application for leave to appeal to the New York Court of Appeals, specifically assigning error to the Second Department's resolution of it. Cf. Galdamez v. Keane, 394 F.3d 68, 76 (2d Cir. 2006); Morgan v. Bennett, 204 F.3d 360, 370-71 (2d Cir. 2000). Thus, having fairly presented his federal claim in state court, Sutton has exhausted his state judicial remedies, meaning that this Court may review that ground of his habeas petition. See, e.g., O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999); Picard v. Connor, 404 U.S. 270, 275 (1971) ("It follows, of course, that once the federal claim has been fairly presented to the state courts, the exhaustion requirement is satisfied." (citations omitted)); Morgan, 204 F.3d at 369. Moreover, because the state court adjudicated petitioner's claim on the merits, see Sutton, 12 A.D.3d at 707, 784 N.Y.S.2d at 881, the Court will analyze it applying AEDPA's deferential standard of review. See Cone, 129 S. Ct. at 1784.

Sutton claims that the "show-up identification" used was unduly suggestive because (1) prior to this identification procedure, Margon and Chaltain had heard police communications stating that a suspect was in custody and (2) Sutton was both handcuffed and being flanked by

police officers during the identification procedure. Given its conduct nearby the crime scene and its happening shortly after commission of the crime, neither the trial court nor the Second Department thought the show-up to be overly suggestive and in violation of the Constitution. See 12 A.D.3d at 707, 784 N.Y.S.2d at 881.

As the Supreme Court has noted, "[i]t is the likelihood of misidentification which violates a defendant's right to due process," making an identification procedure that leads to a very substantial likelihood of misidentification the "primary evil to be avoided." Neil v. Biggers, 409 U.S. 188, 198 (1972) (citing Simmons v. United States, 390 U.S. 377, 384 (1968)). "Suggestive confrontations are disapproved because they increase the likelihood of misidentification, and unnecessarily suggestive ones are condemned for the further reason that the increased chance of misidentification is gratuitous." Id. Of course, "the admission of evidence of a showup without more does not violate due process." Id. Yet, even if an identification procedure was unnecessarily and impermissibly suggestive, the next step is not suppression; it is to determine whether, "under the 'totality of the circumstances[,]' the identification was reliable even though the confrontation procedure was suggestive." Id. at 199; see also Manson v. Brathwaite, 432 U.S. 98, 114 (1977) ("[R]eliability is the linchpin in determining the admissibility of identification testimony."); Abdur Raheem v. Kelly, 257 F.3d 122, 133 (2d. Cir. 2001) ("In sum, the identification evidence will be admissible if (a) the procedures were not suggestive or (b) the identification has independent reliability." (citations omitted)). As the Supreme Court has taught, the factors to be considered in determining reliability "include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation."

Biggers, 409 U.S. at 199-200.

The Court finds that the decision by the Second Department to reject Sutton's identification claim was not contrary to clearly established federal law as determined by the Supreme Court. Plainly, the Appellate Division did not arrive at a conclusion of law opposite to one reached by the Supreme Court, and it did not reach a result different from one reached by the Supreme Court on materially indistinguishable facts. Its determination that the showup identification procedure was not unduly suggestive, citing the "spatial and temporal proximity to the commission of the crime," is supported both by the evidence and by Supreme Court cases such as Manson and Biggers. Having Margon and Chaltain—who had had ample opportunity to observe Sutton and Wardrick as they robbed Chaltain—identify Sutton while he was wearing handcuffs (necessary because he had attempted to evade capture) served only, as the state appellate court noted, to secure a prompt and reliable identification. And, in light of the interest in securing this identification (and, had police been incorrect, in releasing the innocent man in custody), the showup was not unnecessary. The Second Circuit and the Supreme Court provide guidance on this point. See United States v. Bautista, 23 F.3d 726, 730 (2d Cir. 1994) (citing United States v. Valez, 796 F.2d 24, 27 (2d Cir. 1986)); see also Simmons, 390 U.S. at 384-85; cf. Stovall v. Denno, 388 U.S. 293 (1967), overruled on other grounds by Griffith v. Kentucky, 479 U.S. 314 (1987).

More worrisome, perhaps, is the fact that Margon and Chaltain knew that the police had someone in custody prior to making their identification of Sutton. Cases such as Styers v. Smith, 659 F.2d 293, 297 (2d Cir. 1981), hold that this sort of pre-identification knowledge can render a showup improperly suggestive. Can, but not always, and not here. More precisely, the Court finds that the Appellate Division's decision on this claim was not objectively unreasonable.

9

Further, even if the Appellate Division had run afoul of federal law in determining that the showup was not unduly suggestive, the totality of the circumstances weighs against Sutton's claim. Cf. Jimenez, 458 F.3d at 147. For example, unlike in cases such as Biggers (in which the Supreme Court still found that there had been no substantial likelihood of misidentification), where there was a seven-month delay between the crime and the showup, the showup here took place within an hour of the robbery. There is plentiful evidence that Margon and Chaltain had more than sufficient opportunity to observe Sutton as he robbed Chaltain, and their descriptions of the robber—a black man who was shorter and heavier than his accomplice (Wardrick)—matched Sutton exactly. Certainly, the odds that Margon and Chaltain could and did misidentify their assailant were low, leaving Sutton's due process rights intact.

Accordingly, Sutton is not entitled to relief on this ground.

B. Defendant's adjudication as a persistent violent offender

Sutton argues that his adjudication as a persistent violent felony offender was unconstitutional under Apprendi. The Appellate Division held that Sutton's "contention that his adjudication as a persistent violent felony offender violated his right to a jury trial pursuant to Apprendi v New Jersey . . . is unpreserved for appellate review and, in any event, is without merit." 12 A.D.3d at 707-08 (citation omitted). Such language indicates that the state court decided the claim on an independent and adequate state law ground. See Jimenez, 458 F.3d at 145. When a court decides a claim on an independent and adequate state law ground—as the Appellate Division did here—the claim is procedurally barred. See, e.g., id.

Fundamental fairness does not require that this procedural bar be overlooked. See Teague v. Lane, 489 U.S. 288, 297 (1989). Indeed, Sutton has demonstrated neither cause for his procedural default, see Bossett, 41 F.3d 825, 829 (2d Cir. 1994); see also Part D, infra, nor

has he demonstrated actual prejudice resulting from the alleged violation of federal law[3]—both of which are required. See, e.g., Drekte v. Haley, 541 U.S. 386, 392 (2004); Coleman, 501 U.S. 722, 747 (1991); see also DiGuglielmo v. Smith, 366 F.3d 130, 135 (2d Cir. 2004). Sutton also cannot overcome this bar against federal habeas review because he has not demonstrated that the Court's failure to consider his claim will result in a "fundamental miscarriage of justice." See Haley, 541 U.S. at 393 (citing Murray v. Carrier, 477 U.S. 478, 495-96 (1986)); id. at 394 (quoting Carrier, 477 U.S. at 495-96); Brown v. Greiner, 409 F.3d 523, 532 (2d Cir. 2005). Bluntly, Sutton has presented no evidence suggesting that he is "actually innocent", see Haley, 541 U.S. at 393; Bousley v. United States, 523 U.S. 614, 623-24 (1998). Accordingly, relief is foreclosed on this ground as well.

C.  Sutton's pro se claims before the Appellate Division

In his pro se supplemental brief to the Appellate Division, Sutton raised as his chief arguments the following: (1) prosecutorial misconduct deprived him of a fair trial and of his rights under the Fifth, Sixth, and Fourteenth Amendments; (2) the trial court's failure to charge the jury concerning his co-defendants' guilty pleas deprived him of a fair trial and of due process; and (3) the trial court improperly discharged two sworn jurors, in violation of the Sixth Amendment. The Appellate Division held that "[t]he . . . contentions raised in the defendant's supplemental pro se brief are either unpreserved for appellate review, without merit, or do not require reversal." Sutton, 12 A.D.3d at 708. Under Jimenez, "[s]uch an 'either/or' decision is

---

[3] Not that there was a violation of federal law here. Beyond the fact that "[o]nly the court—not a jury—can determine whether the requirements for an enhanced sentence are met." Washington v. Graham, No. 07-5023-pr, 2009 U.S. App. LEXIS 26733, at *2 (2d Cir. Dec. 9, 2009) (citing N.Y. Crim. Proc. Law §§ 400.16(2), 400.15(7)(a)), Apprendi states, quite clearly, that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490 (emphasis added). In other words, the holding in Apprendi—"that 'any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt'"—does not apply to the fact of a prior conviction. Id.; Washington, 2009 U.S. App. LEXIS 26733, at *2. Thus, even if the Court were permitted to decide Sutton's Apprendi claim on the merits, his petition for habeas corpus would fail on this ground, too.

deemed to rest on the merits of the federal claim . . . because there is no plain statement to the contrary." 458 F.3d at 146 (citation omitted); see also id. at 139 ( "[W]hen a state court uses language such as '[t]he defendant's remaining contentions are either unpreserved or [as opposed to "and"] without merit,' the validity of the claim is preserved and is subject to federal review. [Stated differently, w]hen [a court] uses such language, the state court has not adequately indicated [on the face of its opinion] that its judgment rests on a state procedural bar."). Following the Appellate Division's use of such ambiguous language, Sutton raised all three claims in his unsuccessful application for leave to appeal to the New York Court of Appeals. As a result, the Court will construe these claims to have been exhausted (preserved and adversely determined on the merits) at all necessary state levels and will apply AEDPA-deference in analyzing them.

1. Prosecutor's summation

Petitioner claims that the prosecutor's comments during summation were improper. More specifically, Sutton claims that the prosecutor improperly vouched for the veracity and credibility of cooperating witness Wardrick during her summation; that she improperly referred to matters not in evidence; and that she made excessive use of a rhetorical device.

The Court notes that a summation may be beyond what controlling practice rules permit without depriving a defendant of his constitutional rights. Indeed, "it 'is not enough that the prosecutors' remarks were undesirable or even universally condemned.'" Darden v. Wainwright, 477 U.S. 168, 181 (1986) (citation omitted). Supreme Court precedents respect this customary wide latitude given to oral advocacy.

In line with this understanding, the Court finds that the Second Department's decision to reject Sutton's summation claim was not contrary to clearly established federal law as

determined by the Supreme Court. Plainly, here, the prosecutor's argument neither manipulated nor misstated the evidence, "nor did it implicate other specific rights of the accused such as the right to counsel or the right to remain silent." Id. at 181-82 (citation omitted). In addition, the prosecutor's challenged statements were invited by or offered in response to defense counsel's summation. Id. at 182; see also United States v. Bivona, 487 F.2d 443, 447 (2d Cir. 1973) ("In view of this defense barrage, we must accord the prosecutor some range to respond." (citing United States v. Benter, 457 F.2d 1174, 1177 (2d Cir. 1972)). The trial court was also careful to instruct the jurors that evidence consists of sworn testimony, stipulations, and exhibits and that they were to make their final determination of the facts based only on this evidence. Cf. Darden, 477 U.S. at 182. Finally, the weight of the evidence against Sutton suggests that any comment by the prosecutor—even if beyond the pale of the rules of procedure—did not prejudice petitioner before the jury.

Further, the outcome on direct appeal was not objectively unreasonable. See Jimenez, 458 F.3d at 147 (citing Sellan v. Kuhlman, 261 F.3d 303, 311-12 (2d Cir. 2001)). The Appellate Division could have reasonably concluded that the prosecutor's statements in summation did not "'so infect[] the trial with unfairness as to make the resulting conviction a denial of due process,'" or of any other constitutional right. Darden, 477 U.S. at 181 (quoting Donnelly v. DeChristoforo, 416 U.S. 637 (1974)). This Court certainly finds this to be true. Consequently, no relief on this ground is warranted.

2. Accomplices' guilty pleas

Petitioner next argues that he was denied a fair trial and due process because the trial court failed to instruct the jury that the guilty pleas of his co-defendants, Wardrick and Rodriguez (witness tampering), could not be considered evidence of Sutton's own guilt. As an

13

initial matter, the Court finds that the federal constitutional nature of this claim was fairly presented to the New York Court of Appeals, despite the fact that Sutton stated only that the trial court had "denied him a fundamental right and due Process of Law," and despite the fact that he invoked only state cases and state law to bolster his claim. Petitioner asserted his claim with enough particularity to alert New York's high court as to its constitutional nature. See Smith v. Duncan, 411 F.3d 340, 348-49 (2d Cir. 2005).

Working against Sutton, nevertheless, is that he did not request this jury instruction at trial. See United States v. Pujana-Mena, 949 F.2d 24, 27 (2d Cir. 1991) ("'In order to succeed when challenging jury instructions appellant has the burden of showing that the requested charge "accurately represented the law in every respect and that, viewing as a whole the charge actually given, he was prejudiced."'" (citation omitted) (emphasis added)). Moreover, Sutton's burden here "is especially heavy because no erroneous instruction was given . . . . An omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." Henderson v. Kibbe, 431 U.S. 145, 155 (1977). Even in a case in which an instruction is actually given, but challenged, "[b]efore a federal court may overturn a conviction resulting from a state trial . . . it must be established not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment." Cupp v. Naughten, 414 U.S. 141, 146 (1973).

Here, the Court finds that the Appellate Division's determination, that Sutton's attack relating to jury instructions was without merit, was not contrary to clearly established federal law. Applying the unreasonable application clause of section 2254(d), the Court finds that the trial court's failure to give the subject charge was not objectively unreasonable. To the contrary, the charge as a whole read to the jury by the trial court would have in no way caused the jury to

believe that it could presume Sutton's guilt on the basis of his co-defendants' guilty pleas. The trial court very clearly (a) explained that Sutton was to be presumed innocent and (b) admonished the jurors that Sutton could not be convicted solely on the testimony of a witness who is an accomplice. Though without the explication Sutton has belatedly sought, the instruction that the jury could not convict solely on accomplice testimony included testimony that an accomplice had admitted his own guilt. Even assuming, arguendo, that the trial court's failure to instruct the jury on how to treat Wardrick's and Rodriguez's respective guilty pleas was in error, far more importantly, having reviewed "the instructions as a whole to see if the entire charge delivered a correct interpretation of the law," the Court finds that Sutton's challenge on this point is meritless. California v. Brown, 479 U.S. 538, 541 (1987).

3. Discharge of sworn jurors

Sutton claims that in discharging two sworn jurors the trial court violated his Sixth Amendment right to a jury of his choosing. These jurors were discharged because of illness in their respective families and such a trial court decision is authorized by C.P.L. §§ 270.35(1) and (2).

To begin, Sutton has not argued, and there is no evidence to suggest, "that the replacement jurors were biased, or that some constitutional infirmity ensued as a result of the trial court's decision." Wheeler v. Phillips, No. 05-CV-4399, 2006 U.S. Dist. LEXIS 61397, at *16 (E.D.N.Y. Aug. 15, 2006); see also United States v. Hamed, 259 Fed. Appx. 377, 378 (2d Cir. 2008) (rejecting appellant's challenge where the replacement of a juror did not affect any of his substantial rights). Consequently, the Court rejects Sutton's prayer for relief on this ground outright, since, "[i]n the absence of any such claim of prejudice, no constitutional concern is implicated and no basis for habeas relief exists." Wheeler, 2006 U.S. Dist. LEXIS 61397, at

*16.

Even if Sutton had raised a federal constitutional claim, the Second Department's determination that this claim was without merit satisfies AEDPA. Obviously, any trial court may substitute a juror for cause at its own discretion, and this exercise should not be disturbed absent a showing of bias or prejudice to the defendant. See, e.g., United States v. Gambino, 951 F.2d 498, 503 (2d Cir. 1991), cert. denied, 504 U.S. 918 (1992) (citations omitted); see also Hughes v. Phillips, 457 F. Supp. 2d 343, 368 (S.D.N.Y. 2006) (citing Marshall v. Longberger, 459 U.S. 422 (1983)). And it has long been established "that a defendant's valued right to have his trial completed by a particular tribunal must in some instances be subordinated" to other interests. Wade v. Hunter, 336 U.S. 684, 689 (1949) (discussing a claim of double jeopardy); accord United States v. Jorn, 400 U.S. 470, 480 (1971). So long as the tribunal that sits in judgment is impartial, a defendant cannot be heard to complain. Howard v. Kentucky, 200 U.S. 164, 173 (1906) (citation omitted). Furthermore, the Second Circuit has noted that "substitution of an alternate juror for reasonable cause is the prerogative of the court and does not require the consent of any party." United States v. Floyd, 496 F.2d 982, 990 (2d Cir. 1974). Absent a clear abuse of discretion, the decision to discharge a juror will not be reversed. See, e.g., Wheeler, 2006 U.S. Dist. LEXIS 61397, at *17.

Given the absence of a showing of prejudice caused by the seating of the alternate jurors as deliberating jurors, and given the fact that the Appellate Division's determination—to the extent that the Sixth Amendment is even relevant—was not contrary to, or an unreasonable application of, clearly established federal law, this contention also fails. Indeed, on these facts regardless of the standard of review, no error—constitutional or otherwise—occurred.

D.     Ineffective assistance of trial and appellate counsel

16

Sutton raised his constitutional claim of ineffective assistance of trial counsel in his § 440.10 motions and, with respect to appellate counsel, by coram nobis. Decided by state courts on the merits, these claims are exhausted and are subject to AEDPA's deferential review. See, e.g., Cone, 129 S. Ct. at 1784; O'Sullivan, 526 U.S. at 842; Picard, 404 U.S. at 275; Jimenez, 458 F.3d at 145-46.

1.   Trial Counsel

Petitioner claims that he was denied effective assistance of counsel because trial counsel failed to interview him in preparation for trial; because trial counsel failed to request the appropriate charge concerning his co-defendants' guilty pleas; and because trial counsel failed to register timely objections, all in violation of his Sixth Amendment rights. As the Supreme Court stated in Strickland v. Washington, "the proper standard for attorney performance is that of reasonably effective assistance." 466 U.S. 668, 687 (1984). A convicted defendant who claims ineffective assistance of counsel must show both that (1) "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" and (2) "the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. In reviewing a claim of ineffective assistance of counsel even in the abstract, "[j]udicial scrutiny of counsel's performance must be highly deferential," as "[t]here are countless ways to provide effective assistance in any given case." Id. at 689. And, here, the Court also applies the deferential AEDPA standard of review.

The Court finds that the denial of Sutton's 440.10 motions with respect to his ineffective assistance of trial counsel claim was neither contrary to, nor an unreasonable application of, the holding in Strickland, or its Supreme Court progeny. First, as the closest observer, the trial

court, noted, Sutton was under a lockdown order before his trial, making it difficult for trial counsel to arrange visits. Second, the charge used regarding accomplice liability was required by law. Third, Sutton failed to establish that trial counsel's failure to challenge the predicate violent felony adjudication was in error. In sum, nothing in the record points to ineffective assistance of counsel, much less a level of ineffectiveness that could rise to a constitutional dimension. Under AEDPA, the state courts committed no constitutional error in rejecting the petitioner's claim of trial counsel ineffectiveness.

2. Appellate Counsel

Petitioner points to the following alleged deficiencies in the work of his appellate counsel upon which this aspect of his ineffectiveness claim is based: (1) failure to raise on appeal that Sutton had received ineffective assistance of trial counsel (pegged to trial counsel's failure to challenge the constitutionality of his 1979 predicate felony conviction) and (2) misinforming him when she reported that Blakely was inapplicable to his case.

As the Supreme Court observed in Jones v. Barnes, 463 U.S. 745 (1983), appellate counsel's job is, simply, to "'support his client's appeal to the best of his ability'"; appellate counsel has no "duty to raise every 'colorable' claim suggested by a client." Id. at 754 (citation omitted); accord Gulliver v. Dalsheim, 739 F.2d 104, 107 (2d Cir. 1984). This standard applies with particular force where, as here, an appellant's suggested claims are of dubious "color." As in Strickland, moreover, the Jones court cautions against second-guessing the reasonable professional judgments of counsel. Jones, 463 U.S. at 754.

The Court finds that the Appellate Division's rejection of this claim was neither contrary to, nor an unreasonable application of, federal law. Indeed, the affirmations of appellate counsel, written in response to Sutton's application for a writ of error coram nobis, combined with this

Court's previous finding that Sutton was not denied effective assistance of trial counsel, (see Part D.1., supra), are more than enough to persuade the Court that the Appellate Division's denial of petitioner's application was not only free from constitutional error but entirely appropriate.

E.   Subsidiary Motions

Because AEDPA commands dismissal of a petition attacking a state court detention on this record, factual development beyond the existing record is immaterial. The Court, accordingly, denies petitioner's motion relating to a further (but unelaborated) evidentiary development and for an evidentiary hearing as moot. Sutton's motion for summary judgment is denied for the same reason.

**CONCLUSION**

For the foregoing reasons, the petition for habeas corpus of Tyrone Sutton is dismissed with prejudice and the writ is denied. Petitioner's subsidiary motions are also denied. Since Sutton has not made a substantial showing of the denial of a constitutional right, a certificate of appealability shall not issue. 28 U.S.C. § 2253(c)(2). Additionally, the Court certifies pursuant to 28 U.S.C. § 1915(a) that any appeal from this Memorandum and Order would not be taken in good faith and therefore in forma pauperis is denied for the purpose of any appeal. See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

The Clerk of the Court is directed to enter judgment and to close this case.

SO ORDERED.

Dated: Brooklyn, New York
       March 1, 2010

_____
ERIC N. VITALIANO
United States District Judge